UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

EXXON MOBIL CORPORATION,

        Plaintiff,

  v.

NEW WEST PETROLEUM L.P., NEW WEST PETROLEUM, LLC, NEW WEST PETROLEUM, NEW WEST STATIONS, INC. and NEW WEST LLC,

        Defendants.

NEW WEST PETROLEUM, LP, NEW WEST PETROLEUM, LLC, and NEW WEST PETROLEUM, INC.,

        Cross-Complainants,
  v.

EXXON MOBIL CORPORATION and SARTAJ SINGH BAINS,

        Cross-Defendants.

NO. CIV. S-03-2222 WBS PAN

MEMORANDUM AND ORDER RE: MOTION TO ENFORCE SETTLEMENT

----oo0oo----

This litigation concerns which party is contractually responsible for paying the costs of cleaning up pollution at 3430 Northgate Boulevard in Sacramento, California ("the Property"). Currently before the court is plaintiff and cross-defendant Exxon

1

Mobil Corporation's motion to enforce a settlement.

I.   Factual and Procedural Background

Through a series of purchase and sale agreements, several of the parties have had an interest in a gas station built on the Property in 1991. Exxon Mobil Corp. v. New W. Petroleum L.P., No. S-03-2222, 2005 WL 1366482, at * 1-2 (E.D. Cal. June 6, 2005). Specifically, plaintiff transferred its interest in the Property to defendant New West[1] in 1998 and defendant in turn transferred its interest to cross-defendant Sartaj Singh Bains in 2001. Id. at *2-3. The dispute here arose from a clause in the agreement originally executed between plaintiff and defendant, in which plaintiff "agreed to 'undertake such remediation of the Baseline Condition at the Property as is required under applicable laws, regulations, or government orders.'" Id. at *2.

The remediation guarantee was included so that plaintiff could be held accountable for contamination resulting from leaky underground storage tanks that occurred during its period of ownership, which ended in 1998. Id. In 2003, plaintiff decided that it had done more than enough to satisfy this obligation and sought payment from defendant for cleanup efforts which remediated contamination that allegedly resulted from discharge occurring after 1998. Id. ("Exxon claims the

---

[1] In its June 6, 2005 order, the court addressed whether the various New West defendants constitute a single entity and concluded that they are actually four distinct corporations. Exxon Mobil, 2005 WL 1366482 at * 3. However, this distinction is not relevant in the instant motion to enforce settlement and for simplicity's sake, the court will treat New West, in its various forms, as a single defendant.

2

1 costs attributable to additional contamination placed on the site
2 by New West to be $750,021."). Defendant responded with its own
3 claims against plaintiff and cross-defendant Sartaj Singh Bains.
4          On the eve of trial, the parties ostensibly reached a
5 settlement agreement that was both memorialized in writing and
6 read into the record before Magistrate Judge Nowinski.  (Miguel
7 Aff. Exs. 1-2.)  The "Settlement Term Sheet" signed by the
8 parties and/or their representatives stated the following:

> 1. New West Petroleum to pay Exxon Mobil the sum of $65,000, within 14 days of execution of [the][2] settlement agreement.
> 2. Sartaj Bains to undertake Primary Responsible Party designation with County of Sacramento, as of January 1, 2005. Bains to undertake future investigation and remediation.
> 3. New West to pledge up to $100,000 to fund ongoing investigation and remediation of Northgate facility, subject to Tank Fund Reimbursement.
> 4. All parties to dismiss their claims and counterclaims in this case, with prejudice, all parties to bear their own fees and costs.
> 5. All parties to agree to a "re-opener" if costs of environmental clean up (i) exceed $1,500,000 and (ii) are not related to the current or future operations of the Station.
> 6. Bains and New West to procure and provide acceptable financial assurance to Exxon Mobil to undertake and complete future remedial work at the Station.
> 7. Agreement in principle to be memorialized in written agreement no later than September 2, 2005 or trial reinstated.

21 (Id. Ex. 1.)  The second written agreement, contemplated in the
22 seventh term, never materialized, apparently because the County
23 refused to recognize cross-defendant Bains as the primary
24 responsible party.  (Kirk Decl. ¶ 8; Bains Decl. ¶¶ 7-8.)
25          The designation of Bains as the primary responsible

---

[2] This alteration reflects the language used when the parties presented their agreement to the court. It was not part of the written "Settlement Term Sheet." (Compare Miguel Aff. Ex. 1, with id. Ex. 2.)

3

party was apparently significant because, given the structure of the state's Petroleum Underground Storage Tank Cleanup Fund ("UST Fund"), Bains had a better chance of being reimbursed for remediation costs. (Kirk Decl. ¶ 4.) According to Bains' counsel, the fund is disbursed based on the priority class to which a claimant is assigned. (Id.) Class B, encompassing small business owners like Bains, has priority over Class D, which includes large corporations like plaintiff. (Id.) Thus, the parties hoped to increase their chances of recovering costs from the state by substituting Bains as the primary responsible party. (Id. ¶¶ 5-6.) However, these hopes were allegedly dashed by the County when it informed counsel that it was unlikely to make Bains the primary responsible party for the Property and further opined that even if it permitted this change, Bains would share plaintiff's Class D status because the contamination was resulting from a continuous release that began under plaintiff's watch. (Id. ¶ 6.)

Regardless of the fact that the contemplated written agreement never materialized, plaintiff seeks to hold defendant to the terms of the agreement in principle described above. Defendant New West and cross-defendant Bains (hereinafter simply "defendants") argue that the settlement cannot be enforced because the parties' agreement was never final and alternatively, a condition precedent, namely the designation of Bains as a Class B primary responsible party, remains unsatisfied.

II. Discussion

    A.   Legal Standard

"It is well settled that a district court has the

4

1 equitable power to enforce summarily an agreement to settle a
2 case pending before it." Callie v. Near, 829 F.2d 888, 890 (9th
3 Cir. 1987).  However, this power is constrained by two
4 requirements: (1) the agreement must be complete and (2) the
5 parties must have agreed to the terms or authorized their counsel
6 to agree for them.  Id.; Doi v. Halekulani Corp., 276 F.3d 1131,
7 1138 (9th Cir. 2002).

8        State law governs whether a settlement agreement is
9 complete.  Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989)
10 ("The construction and enforcement of settlement agreements are
11 governed by principles of local law which apply to interpretation
12 of contracts generally.").  Significantly then, under California
13 law, an agreement should be interpreted "to give effect to the
14 mutual intent of the parties as it existed at the time of
15 contracting."  U.S. Cellular Inv. Co. of L.A., Inc. v. GTE
16 Mobilnet, Inc., 281 F.3d 929, 934 (9th Cir. 2002) (citing Cal.
17 Civ. Code § 1636; City of Atascadero v. Merrill Lynch, Pierce,
18 Fenner & Smith, Inc., 68 Cal. App. 4th 445, 474 (1998)).  Courts
19 should infer this intent, "if possible, solely from the written
20 provisions of the contract."  Powerine Oil Co., Inc. v. Superior
21 Court, 37 Cal. 4th 377, 390 (2005) (quotation omitted).

22        The language of the Settlement Term Sheet and the
23 transcript record plainly evince the parties' belief that the
24 agreement reached on July 19, 2005 was not final, binding, or
25 complete.  Specifically, the seventh term contemplates a future
26 agreement and refers to the existing terms only as an "agreement
27 in principle."  (Miguel Aff. Ex. 1.)  It also proposes a
28 contingency plan to accommodate the parties' failure to reach a

5

1 final agreement by calling for reinstatement of the trial date if
2 the settlement is not memorialized by September 2, 2005. (Id.
3 (emphasis added).)  Additionally, the first term, as presented to
4 the court, speaks of "the settlement agreement" as something
5 separate from the terms already compiled.  (Id.)  Significantly,
6 the terms do not contemplate execution of "this settlement
7 agreement."  Finally, before Magistrate Judge Nowinski,
8 plaintiff's counsel made clear that further negotiations were
9 anticipated before the "settlement in principal [sic]" would
10 "come to fruition."  (Id. Ex. 2.)

11    Although "an agreement [which] contemplates subsequent
12 documentation" can be binding "if the parties have agreed to its
13 existing terms," subsequent documentation was not only
14 contemplated here, but required by the terms of the agreement.
15 Cf. Ersa Grae Corp. v. Fluor Corp., 1 Cal. App. 4th 613, 624 n.3
16 (1991).  Consequently, as defendants here argue, the parties
17 simply appear to have made an "agreement to agree" and not a
18 complete settlement.[3]  See also Beck v. Am. Health Group Int'l,
19 Inc., 211 Cal. App. 3d 1555, 1562 (1989) ("Whether a writing
20 constitutes a final agreement or merely an agreement to make an
21 agreement depends primarily upon the intention of the parties.").
22 Unfortunately for plaintiff, "[n]either law nor equity provides a
23 remedy for breach of an agreement to agree in the future."  Autry
24 v. Republic Prods., Inc., 30 Cal. 2d 144, 151 (1947).  "[T]he

---

[3] Significantly, plaintiff's counsel seems to have conceded this point before Magistrate Judge Nowinski at the Settlement Conference Hearing, where he noted that "[u]nfortunately, for a complete settlement there are a couple of moving pieces that we don't have control over . . . ."  (Miguel Aff. Ex. 2 (Settlement Hr'g Tr. 2, July 19, 2005).)

6

rights of private parties to enter into contracts also embraces their rights not to, and there is no contract where the objective manifestations of intent demonstrate that the parties chose not to bind themselves until a subsequent agreement is made." Rennick v. O.P.T.I.O.N. Care, Inc., 77 F.3d 309, 316 (9th Cir. 1996) (citing Beck, 211 Cal. App. 3d at 1562).[4]

        IT IS THEREFORE ORDERED that plaintiff's motion to enforce settlement be, and the same hereby is, DENIED.  This action is set for Status Conference at 9:00 a.m. on March 31, 2006.  On or before March 24, 2006, the parties shall file status reports suggesting new dates for the Final Pretrial Conference and trial in this matter.

        IT IS SO ORDERED.

DATED: February 17, 2006

_____
WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE

---

[4] As an aside, the court notes that plaintiff's argument for enforcement relies almost entirely on Doi v. Halekulani Corp., which is distinguishable from this case.  In Doi, the Ninth Circuit held that when a party affirms the terms of an agreement in open court, those terms are binding regardless of whether the parties contemplate future documentation of the agreement.  276 F.3d at 1134-35.  Significantly, the plaintiff in Doi, who later sought to avoid the agreement, agreed to terms that merely contemplated additional documentation.  Id. at 1134.  The terms did not provide for reinstatement of the trial date if and when the parties failed to agree on the final documentation.  Thus, unlike the case at hand, the court had a complete agreement that it could enforce.  The situation is different here.